No. 47,322

THE STATE OF KANSAS, *Appellee*, v. RAYMOND C. WHEELER, *Appellant.*

(523 P. 2d 722)

Opinion filed June 15, 1974.

*Douglas J. Irwin,* of Wichita, argued the cause and was on the brief for the appellant.

*Clifford L. Bertholf,* assistant district attorney, argued the cause, and *Vern Miller,* attorney general, and *Keith Sanborn,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This appeal stems from the conviction of the defendant, Raymond C. Wheeler, on three charges of selling heroin and one charge of heroin possession. Mr. Wheeler was acquitted on a charge of possessing marijuana with intent to sell.

Various errors are assigned. Before they are discussed, however, a brief statement as to the facts should be supplied. On February 28, 1973, a narcotics investigator, or agent, went to Wheeler's house looking for a Ted Dalton. He told Wheeler he wanted to buy some heroin from Dalton. Wheeler asked how much was wanted, and he then sold the agent "half a spoon" for $50. The following day the agent returned and complained to Mr. Wheeler of the quality. On this occasion Wheeler sold the agent "a spoon" for $100 and said if this was not of better quality he would replace it free of charge. Two days later, March 3, 1973, the agent went again to Wheeler's residence, told Wheeler that the people for whom he bought the heroin were satisfied with the last "spoon" and were going to buy it all. The upshot of this visit was that the agent bought another "half spoon" for $50 and was going to buy the other half that evening. About 8 p. m. state and local officers raided Wheeler's house while the agent was there. They found fifteen packets of heroin and five bags of marijuana.

None of the defendant's complaints are directed toward the

sufficiency of the evidence. They extend to trial errors and alleged violations of constitutional rights.

First it is contended that defense counsel, Mr. James W. Wilson, was incompetent and that the trial court erred in refusing to appoint new counsel for the defendant. The matter arose in this way: After the jury had been impaneled the defendant moved that Mr. Wilson be discharged; that new counsel be appointed; and that time be given for the new attorney to become acquainted with the case. Mr. Wheeler also requested that he, himself, be appointed co-defense counsel because he would like to designate the way his defense should be handled. The reason advanced by Wheeler for dissatisfaction with his appointed counsel was that he demonstrated no willingness to provide a defense but that he "badgered and intimidated me to plead guilty." The trial court, after commenting that present appointed counsel was competent, that he had been a prosecutor, and that he was aware of the quantum of proof necessary for conviction, refused "to change Counsel in the middle of a trial." The court did, however, appoint Mr. Wheeler as his own co-defense counsel and continued Mr. Wilson's appointment as counsel, to the end that Wilson actively participated in the trial of the case.

We find no error in the action taken by the trial court. The test of adequacy of counsel was well phrased by Mr. Justice Schroeder in *Winter v. State*, 210 Kan. 597, 603, 502 P. 2d 733:

"The adequacy and effectiveness of an attorney's services on behalf of an accused in a criminal action must be gauged by the actual representation afforded the accused in its totality. To be a denial of an accused's constitutional rights it must clearly appear that the representation of the accused was wholly ineffective and inadequate. . . ."

See, also, *Reid v. State*, 213 Kan. 298, 301, 515 P. 2d 1040; *Widener v. State*, 210 Kan. 234, 236, 499 P. 2d 1123.

We were advised on oral argument that Mr. Wilson represented the defendant at the preliminary examination as well as at the trial. Having been present at the preliminary hearing he would have become acquainted with both the nature and extent of the state's evidence against his client. He thus would occupy a preferred position from which to appraise realistically the gravity of the case against his client and to advise with him as to the best course of action to pursue. Although the defendant has used strong words in leveling charges against his counsel, he cites not a single instance of badgering or intimidation on his part. We are

inclined toward the belief that Mr. Wilson did no more than to evaluate the case against his client in terms of its probable outcome should the case proceed to trial, and to advise Mr. Wheeler accordingly. No less would be expected of any conscientious lawyer in a matter of this kind.

With respect to Mr. Wilson's deportment at the trial, it was said by the defendant, himself, in arguing his motion for a new trial that once trial got underway he "performed admirably in presenting the Defendant's case" and his "demeanor was impeccable throughout the trial proceedings." We can think of no better way to phrase it.

Mr. Wheeler next complains he was denied his constitutional right to telephone for an attorney to be present while his premises were being searched. In an out of court hearing the defendant testified that during the search he was handcuffed in another room and twice asked for a telephone call to an attorney to protect his rights, but that his requests were refused. We believe Mr. Wheeler mistakes the breadth of the constitutional right to assistance of counsel. There are limitations as to the time when the right accrues, as the United States Supreme Court noted in *Kirby v. Illinois*, 406 U. S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877:

"In a line of constitutional cases in this Court . . . it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. . . .

". . . [W]hile members of the Court have differed as to existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

. . . . . . . . . . . . .

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. . . ." (pp. 688-690.)

The trial court ruled that Mr. Wheeler possessed no constitutional right to the presence of counsel at the time his house was being searched and we can not fault the court's ruling in such regard

During the presentation of the defendant's motion for new trial, counsel stated: "We also informed the Court that we had requested a copy of the preliminary hearing transcript prior to trial" and "this was also communicated to the assignment Judge and we proceeded to trial without that transcript while it was on order before the reporter in the Court of Common Pleas could obtain it." The record contains no other reference concerning such a request and we are entirely uninformed as to when the request may have been placed, what efforts were made to obtain delivery of the transcript in time for trial, and whether a continuance was sought until the transcript could be completed.

In the absence of a showing of any sort, we cannot say that the defendant has been prejudiced for lack of a transcript. There are alternative devices which may be available to an accused and serve the purpose of a transcript. In *State v. Kelley*, 209 Kan. 699, 498 P. 2d 87, we discussed some of those alternatives which we said might serve as a substitute for a transcript within the framework laid down in *Britt v. North Carolina*, 404 U. S. 226, 30 L. Ed. 2d 400, 92 S. Ct. 431. In *Kelley*, and later in *State v. Julian*, 212 Kan. 169, 509 P. 2d 1123, we pointed to factors which were relevant on the issue of alternative devices: whether the accused was represented by the same counsel both at the preliminary examination and at the trial; the length of time transpiring between the preliminary hearing and the trial; and the availability of the reporter or court stenographer who took the preliminary testimony.

As we have said, Mr. Wilson represented the defendant at the preliminary examination as well as at the trial; the preliminary hearing was held sometime subsequent to March 3, while the trial commenced May 8, a relatively short time thereafter; the court of common pleas sits in the same courthouse which houses the district court and the availability of the court stenographer and his notes may be presumed.

The defendant further contends that the trial court erred in over-ruling his motion to suppress the state's evidence in its entirety. His contention in this regard relates to the validity of the search warrant under which his premises were searched and the drugs were seized. Neither the search warrant itself, nor the application therefor, nor the proceedings had when it was issued have been reproduced in the record. Accordingly, we are in no position to make a reasoned judgment thereon. We may say, however, that Wheeler's principal objection seems to be that the warrant was issued on

hearsay information. This is an objection concerning which this court has ruled before, and has rejected. (See *State v. Hart,* 200 Kan. 153, 162, 434 P. 2d 999; *State v. Lamb,* 209 Kan. 453, 467, 497 P. 2d 275.) It is also generally held that in the absence of statutory authority a party against whom a search warrant has been directed may not dispute the matters alleged in the supporting complaint or affidavit. (*State v. Lamb,* supra.)

We pass to the fifth point wherein the defendant asserts the testimony of the state's investigator should be stricken *in toto* because his credibility was never established. This argument is wholly specious. The question of credibility is a matter for consideration by the jury; it is the jury which, as the trier of the facts, will decide whether a witness is believable or not. (*State v. Armstrong,* 207 Kan. 681, 486 P. 2d 1322.) The defendant's motion to strike the investigating agent's testimony was correctly overruled and this point merits no further attention.

In point six the defendant asserts that the trial court unduly limited cross-examination of the state's witness, the narcotics investigator. The record reflects that a number of objections were sustained on the ground of irrelevancy during questioning by Mr. Wheeler, although it must be said the cross-examination progressed much more smoothly after a conference with counsel. On the whole, we believe the court's rulings with respect to the cross-examination of the agent were correct, with one exception.

The record discloses the following colloquy:

"THE COURT: Mr. Wheeler, as I understand it, you would like to show through the testimony of this witness that he has been—and I think· I am phrasing this in its best light—that he has been arrested by the Attorney General's Office for violation of the drug laws and has made a deal with the Attorney General's Offce that if he works as an agent he will not be prosecuted on those other cases?

"MR. WHEELER: That is correct, your Honor.

"THE COURT: I am going to hold that that is not admissible evidence. For the sake of my ruling I am going to assume that it is true and that is what the Defendant—the witness will testify to. And I am going to hold that it is not admissible to attack his credibility in that manner."

It appears to us this was a proper area to be plumbed by cross-examination. One of the legitimate uses of that handy tool is to test the veracity and credibility of those who take the witness stand. (*State v. Abbott,* 65 Kan. 139, 69 Pac. 160.) While the extent of cross-examination for purposes of impeachment lies largely within the sound discretion of the trial court (*State v. Osburn,* 171 Kan.

330, 333, 232 P. 2d 451; *Randle v. Kansas Turnpike Authority,* 181 Kan. 416, 421, 312 P. 2d 235), we believe discretion was overreached in this case. Whether the state's witness was under compulsion or special inducement to testify was, in our judgment, a proper subject to be explored. (*State v. Tawney,* 81 Kan. 162, 105 Pac. 218.)

However, in view of the compelling circumstances present in this case, we do not view the error as reaching prejudicial proportions or as requiring reversal. (See K. S. A. 60-261; *State v. Armstrong,* supra.)

As to point number seven the defendant complains that the several charges lodged against him were improperly consolidated for trial. This supposed grievance comes about because of the fact the charges were contained in three separate informations. The point lacks merit, however. The offenses charged were of like character and occurred within a limited period of time. K. S. A. 1973 Supp. 22-3202 (1) provides that two or more crimes may be charged in the same complaint or information where they are of similar character or are based on the same act or transaction or on two or more transactions connected together or constituting parts of a common scheme or plan. K. S. A. 1973 Supp. 22-3203 provides that the court may order that two or more complaints or informations against a single defendant be tried together if the crimes could have been joined in a single complaint or information. The consolidated trial held in this case falls within the purview of these statutes.

Finally, the defendant asserts the trial court erred in failing to give a procuring agent instruction. He contends that he acted as an agent for the buyer, the undercover agent, not for or as the seller of the drugs, and he insists he was entitled to an instruction on this theory of defense.

We have previously discussed the procuring agent theory and have approved its availability as a defense in narcotics cases. We have held also that where there has been evidence which would support this defense, the jury should be instructed in regard thereto when an instruction has been requested. The rule is capsulized in *State v. Osburn,* 211 Kan. 248, 505 P. 2d 742, in this language:

"When the procuring agent theory has been properly raised by the evidence and a request for an instruction has been made by the accused a jury should be instructed that should the jury find the defendant merely acted as a procuring agent for the purchaser and not for or as the seller of the drugs the jury should find the defendant not guilty of selling the drugs." (Syl. ¶ 3.)

The state contends there was no evidence to support the procuring agent theory or to justify the giving of instructions thereon. There is a good deal of merit in this contention but we need not determine the question on this appeal. Although the defendant entered a blanket objection to the court's instructions, he did not request that a procuring agent instruction be given. Hence, he is in no position to complain of the court's failure to instruct along that line. (1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, § 551; 2 Hatcher's Kansas Digest [Rev. Ed.] Criminal Law, § 427.)

A few other complaints of minor nature are sprinkled throughout the record and Wheeler's brief but are of insufficient consequence to require detailed discussion.

We find no error justifying reversal and the judgment of the court below is affirmed.