No. 48,484

STATE OF KANSAS, *Appellee,* v. STEVEN CHARLES SANDERS, *Appellant.*

(563 P.2d 461)

Opinion filed April 9, 1977.

*John C. Humpage,* of Topeka, argued the cause and was on the brief for the appellant.

*Zygmunt Jarczyk,* Assistant District Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, *Nick A. Tomasic,* District Attorney, and *Dennis L. Harris,* Assistant District Attorney, were on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant-appellant, Steven Charles Sanders, appeals from a conviction, in a trial to the court, of possession of Cannabis Sativa L. (marijuana) with the intent to sell in violation of K. S. A. 1976 Supp. 65-4127b. The central issue involves the sufficiency of an affidavit upon which a search warrant was issued.

The search warrant in question was issued by the judge of division No. 6 of the Wyandotte district court on May 12, 1974. As a result of the execution of the search warrant quantities of narcotic drugs were seized at the residence of the defendant and a four count information was filed against him. Three counts were later dismissed. Prior to the scheduled date for a preliminary hearing, defendant filed, in the magistrate court, a motion to suppress the evidence seized in the execution of the warrant. After an evidentiary hearing before the magistrate, defendant's

motion to suppress was denied, and thereupon defendant waived preliminary hearing and was bound over for trial to the district court.

In the district court, defendant filed a second pretrial motion to suppress the evidence on essentially the same grounds as alleged in his first motion. After a hearing before the district court, defendant's motion was again denied. Thereupon, the parties stipulated that a trial by jury would be waived, the state dismissed three counts of the information, and it was further stipulated and agreed that the case would be submitted to the district court upon a stipulation of facts which reads in pertinent part:

"THAT IT IS STIPULATED BY THE PARTIES hereto that the Defendant was an occupant of the premises at 35 South 15th Street (upstairs apartment), Kansas City, Kansas, on May 12, 1974.

"IT IS FURTHER STIPULATED AND AGREED BY THE PARTIES HERETO that the authorities gained entry to said premises on May 12, 1974, on the basis of a Search Warrant issued by the Honorable Cordell Meeks, Judge of the Wyandotte County District Court, Division No. 6, on May 12, 1974, said Search Warrant to be admitted into evidence herein and marked as Defendant's Exhibit 'A'. The Search Warrant issued on the basis of an Affidavit submitted by Jack Hartman, Special Agent, Attorney General's Office, on May 12, 1974, said Affidavit to be admitted into evidence and marked Defendant's Exhibit 'B'.

"THE PARTIES ADDITIONALLY STIPULATE that as a result of the execution of the Search Warrant herein, the Officers removed from the Defendant's Premises '32 large packages' of green vegetation, same marked as the State's Exhibit 1, which has additionally been analyzed by a forensic chemist and the chemist's testimony would reflect that the green vegetation, the '32 large packages', possessed the properties of Cannabis Sativa L. and serves as the basis of the prosecution herein.

"THE PARTIES AGREE AND STIPULATE FURTHER that at the time of the State's offer of its Exhibit 1 into evidence herein, the Defendant would renew his objection to its introduction for the reasons more fully set out in the Defendant's Pretrial Motion to Suppress and Memorandum filed in support thereof, same being overruled by the Court on April 16, 1975.

"THE PARTIES FURTHER STIPULATE that the transcript of the Defendant's Preliminary Hearing, same being conducted by the Magistrate Court of Wyandotte County, Kansas, on July 18, 1974, for the sole purpose of presenting the issue of material false representation of fact, the issue being readily raised in the Defendant's Motion to Suppress, should be admitted into evidence for this purpose and marked Defendant's Exhibit 'C'.

"IT IS ADDITIONALLY AND FURTHER STIPULATED AND AGREED BY AND BETWEEN THE PARTIES HERETO that the Defendant had witnesses in attendance to the Court on April 3, 1975, to testify in relation to the issue of material false representation of fact that the Defendant raised in his Motion to Suppress; however, the Court was not inclined to hear any of the testimony from the witnesses on this issue."

The court accepted the stipulation and admitted the evidence as stipulated and after considering the same found the defendant guilty as charged in the remaining count. After a motion for a new trial was denied, this appeal was perfected.

The points raised by defendant all go to the validity of the search warrant and the sufficiency of the supporting affidavit upon which the issuing judge relied. Defendant's argument on his first point goes to the sufficiency of the information contained in the affidavit for search warrant signed by Jack L. Hartman, a special agent for the attorney general's office.

The affidavit reads in material part:

"The undersigned being duly sworn deposes and says:

"That he has reason to believe that on the premises known as 35 South 15th Street (upstairs apt.) in the Wyandotte District of Kansas, there is now being concealed certain property, namely Cannabis Sativa L. (commonly known as Marijuana) Cocaine, and Heroin which are illegal for possession by the Uniform Control Substance Act, K. S. A. 65-4105.

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: The assigning Officer swears and affirms that he has information from a confidential informant, who he has known for *several months* who has given him information in the past that has proven to be correct, that at the above address is secreted Heroin and Cocaine in one ounce lots and Marijuana in one pound lots. The confidential informant states that this is the residence of Steve Sanders, and he has purchased the above mentioned items within the last 24 hours.

"/s/ Jack L. Hartman
"Special Agent, A.G. Office."

(Emphasis supplied.)

While the affidavit is not drawn with grammatical skill, it is sufficient on its face. It describes the premises and subject property of the search with certainty and identifies defendant as being the resident. The critical information is hearsay obtained from an unnamed informant; however, reliability is shown by the statement that previous information received proved to be correct and more importantly the affidavit states that informant had purchased illegal drugs within the previous 24-hour period. The last statement is an admission by the informant against his criminal interest.

Principles governing the determination whether a search warrant was validly issued, enunciated by the United States Supreme Court in leading cases on the subject, were analyzed and the

precedents therein were adopted by this court in *State v. Hart,* 200 Kan. 153, 434 P. 2d 999, wherein we said:

"We are mindful of what has been said in *Nathanson v. United States,* 290 U. S. 41, 78 L. Ed. 159, 54 S. Ct. 11; *Giordenello v. United States,* 357 U. S. 480, 2 L. Ed. 2d 1503, 78 S. Ct. 1245; and *Aguilar v. Texas,* 378 U. S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509; and we recognize the precedent established by those cases. The import of those decisions, as we read them, is that before a search warrant may validly be issued, there must have been placed before the issuing magistrate sufficient facts to enable him to make an intelligent and independent determination that probable cause exists; that bald conclusions or mere affirmations of belief or suspicion are not enough; and while an affidavit may be based on hearsay, there must be sufficient affirmative allegations as to the affiant's personal knowledge or his knowledge concerning his informant, or as to the informant's personal knowledge of the things about which the informant spoke, to provide a rational basis upon which the magistrate can make a judicious determination of probable cause." (p. 162.)

The requirements for the issuance of a state search warrant based on hearsay, set forth in *Aguilar v. Texas,* 378 U. S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, were further considered by this court in *State v. Hubbard,* 215 Kan. 42, 523 P. 2d 387. In *Hubbard,* as in the case at bar, the affidavit in support of the search warrant was based largely upon hearsay. We spoke of the *Aguilar* test as being twofold with respect to the supportive strength of hearsay evidence. The first test concerns the reliability of the informant's information and the second is the requirement that the magistrate be informed of the underlying circumstances which led an affiant to believe the informant to be credible. In the instant affidavit the affiant swears that the informant has supplied information in the past which has proven to be correct. This satisfies the reliability test. Affiant's statement that a purchase was made within the last 24 hours discloses underlying circumstances which would permit the affiant to believe the informant to be credible.

The record reflects, as will be discussed later, that all of the information available to affiant was not presented. Neither full disclosure of facts at hand nor elaborate specificity are required. (*United States v. Ventresca,* 380 U. S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741.)

Although the court in *Spinelli v. United States,* 393 U. S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, found that the affidavit therein fell short of the standards set forth in *Aguilar,* it reaffirmed principles pertinent to the issue which had been enunciated in prior decisions. The court said:

". . . In holding as we have done, we do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck v. Ohio,* 379 U. S. 89, 96 (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois,* 386 U. S. 300, 311 (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca,* 380 U. S. 102, 108 (1965); and that their determination of probable cause should be paid great deference by reviewing courts, *Jones v. United States,* 362 U. S. 257, 270-271 (1960). . . ." (p. 419.)

While, as we have previously indicated, the instant affidavit is not a model of literary composition, its meaning is clear when read in a common sense and realistic fashion. This statement appearing in *United States v. Ventresca,* supra, is apropos:

". . . If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." (p. 108.)

Reading the instant affidavit as a whole, in the context of the foregoing rules, we are satisfied there was a substantial basis for the issuing judge to conclude that narcotics were probably present in defendant's residence and that is sufficient. (*Jones v. United States,* 362 U. S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A. L. R. 2d 233.) We conclude the affidavit, on its face, sufficiently established probable cause for the issuance of a warrant under the foregoing tests.

In his second point, defendant claims error in the trial court's refusal to permit defendant to submit evidence which defendant claims would show a material false representation of fact in the affidavit of special agent Hartman. Defendant strenuously argues that even if the affidavit of Hartman was facially sufficient, he was entitled to go behind the surface of the affidavit after initial showing of a misrepresentation of a material fact. In support of his position defendant relies upon *United States v. Carmichael,* 489 F. 2d 983 (7th Cir. 1973) and other federal cases in accord.

In answer to defendant's arguments, the state first responds by

pointing out that the rule followed in this jurisdiction is that in the absence of statutory authorization a person against whom a search warrant is directed may not dispute the matters alleged in the affidavit supporting the warrant. *(State v. Wheeler,* 215 Kan. 94, 523 P. 2d 722; *State v. Lamb,* 209 Kan. 453, 497 P. 2d 275; 4 Wharton's Criminal Law and Procedure, Search and Seizure, Sec. 1545, pp. 167-168; 5 A. L. R. 2d, Anno., p. 394; 68 Am. Jur. 2d, Searches and Seizures, Sec. 66, p. 720.) While, as defendant points out, there is some authority to the contrary (See Vols. 1-6 A. L. R. [2nd Series] Later Case Service 1976 Supp., Sec. 3, p. 73 [5 A.L.R. 2d, p. 405]), the rule of *Lamb* and *Wheeler* prevails in a majority of jurisdictions. The state of the law is summed up in 68 Am. Jur. 2d, *supra,* in these words:

". . . A majority of the state courts which have considered the problem have held that in the absence of statute, the matters contained in an affidavit on which a search warrant is based may not be disputed by the person against whom a warrant is directed, for the purpose of showing the invalidity of the warrant. A few state courts have taken the position that the truth or falsity of facts stated in supporting affidavits may be so disputed, and some federal cases have stated that such an attack might be permitted where the defendant makes an initial showing of falsehood." (p. 720.)

To this date at least, the United States Supreme Court has not seen fit to directly rule upon the extent to which a court may or must permit an attack upon the supporting affidavit of a search warrant, which upon its face, establishes probable cause. The last word from the high court appears in *Rugendorf v. United States,* 376 U. S. 528, 11 L. Ed. 2d 887, 84 S. Ct. 825, reh. den. 377 U. S. 940, 12 L. Ed. 2d 303, 84 S. Ct. 1330, wherein Justice Clark speaking for the court said:

". . . This court has never passed directly on the extent to which a court may permit such examination when the search warrant is valid on its face and when the allegations of the underlying affidavit establish 'probable cause'; however, assuming, for the purpose of this decision, that such attack may be made, we are of the opinion that the search warrant here is valid. . . ." (pp. 531-532.)

Further in the opinion the court observed that factual inaccuracies in the affidavit which were developed by testimony, were of only peripheral relevancy to the showing of probable cause and did not go to the integrity of the affidavit.

We have examined many of the cases cited by defendant's industrious counsel. We have also considered the review of the

cases on the subject and the author's comprehensive analysis of all facets of the issue in a treatise entitled "The Outwardly Sufficient Search Warrant Affidavit: What If It's False?", appearing in 19 U. C. L. A. Law Review (1971), p. 96. With respect to federal decisions the author observes:

> "Lower federal courts are divided on the question of whether the victim of a search may contest the veracity of the facts alleged in an affidavit. Those federal courts allowing challenge have done so under provisions of Federal Rule of Criminal Procedure 41 (e), or a prior statutory enactment, the Espionage Act of 1917. Other federal courts have refused to quash warrants or hear evidence tending to show falsity of the facts of affidavits once a judicial officer has determined that the warrants rest on probable cause.  . . ." (pp. 104-105.)

Concerning state court decisions, the author says:

> "The majority of state courts have been wary of opening this area to potential abuse by defendants and have, therefore, prohibited disputes of search affidavits where such documents establish probable cause on their face." (p. 106.)

Our search warrant statutes (K. S. A. 22-2501, *et seq.* [and 1976 Supp.]), enacted in 1970, have not been amended in any manner relevant to the right of a person to dispute matters alleged in search warrant affidavits. *State v. Lamb,* supra, was decided in 1972 and the holding therein was restated in the identical language in paragraph (4) of the syllabus in *State v. Wheeler,* supra, decided in 1974.

In the absence of statutory direction we find no compelling reason to overrule our holdings in *Lamb* and *Wheeler.*

As an alternative response to defendant's contentions the state maintains that even if we were to overrule *Lamb* and *Wheeler,* the record here does not warrant suppression even under the so-called "attack rule" followed by some federal courts.

As indicated in the stipulation of the parties, when defendant's motion was first presented, prior to preliminary hearing, the magistrate, over the state's objection, granted an evidentiary hearing. Agent Hartman was examined at length. It was brought out that his statement in the affidavit that he had known the informant for "several months" was erroneous. Hartman admitted he had only known the informant for about fifteen days and indicated the discrepancy resulted from a typist's error—that he had said "several weeks" instead of months when the affidavit was drafted. Hartman's testimony revealed that he had had the residence of defendant under surveillance on several occasions

and had witnessed what he described as traffic in drugs. Hartman further testified that at least on one occasion the informant had given information which enabled Hartman to make a drug buy. The evidence reveals no intentional or deliberate misrepresentation in the affidavit as to any material matters relevant to the showing of probable cause. The factual inaccuracies stressed by defendant fall short of destroying the integrity of the affidavit. Hartman's testimony discloses that the affidavit did not reveal all of the sources of the affiant's belief, but this was unnecessary. (*State v. Ogden,* 210 Kan. 510, 502 P. 2d 654.)

When defendant renewed his motion to suppress before the trial court the transcript of the testimony in the magistrate's hearing was submitted to and considered by the trial court over the state's objection. A proffer of evidence made by defendant was, in effect, only a denial of the averments of the affidavit. In its ruling on defendant's motion, the trial court cited the rule of *Lamb* and *Wheeler,* but nevertheless continued:

"Disregarding this, however, if the testimony given by the officer at the preliminary hearing is to be considered in this matter, then the entire testimony should be considered. There was testimony that Hartman knew the informant 'several weeks' and that the informant had given him information on one occasion at least that had enabled Hartman to make a buy of a controlled substance. In addition there was evidence that Hartman had had the premises of defendant under surveillance on several occasions and witnessed traffic in drugs at the premises.

"After consideration, the defendant's motion to suppress is denied."

The judgment is affirmed.