(579 P.2d 146)

No. 48,898

STATE OF KANSAS, *Appellee,* v. RICKY JACQUES, *Appellant.*

Affirmed as modified, 225 Kan. 38.

Opinion filed May 12, 1978.

*Daniel E. Monnat* and *Orval Fisher,* of Wichita, for the appellant.

*J. Larry Linn,* assistant district attorney, *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, for the appellee.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

ABBOTT, J.: This is a direct appeal from a jury verdict convicting defendant of unlawful possession of heroin. (K.S.A. 1977 Supp. 65-4127a.)

On September 3, 1976, at 9:50 p.m., Wichita police officers obtained a search warrant authorizing a search of the north half of a duplex at 2029 North Volutsia in Wichita. The application for the search warrant was sworn to on information and belief, and related information received by the affiant from a confidential informant.

The item to be seized was an unknown quantity of heroin. The search warrant was executed some thirty minutes later, at 10:20 p.m. At least six plainclothesmen and one uniformed officer participated in the search. They knocked on the front door and received no response. They knocked again, identified themselves as police officers and stated the purpose of their visit. Almost simultaneously they forced the door open with a seventy-five-pound battering ram.

The defendant was observed standing in a hallway separating the living room and kitchen areas of the residence. He had a telephone in his hand. As the officers approached, the defendant threw the telephone to the floor. He was observed to bring his right hand down and out of sight and then back to his mouth, appearing to put something into his mouth. The officers did not observe any object in defendant's hand, nor did they see any object pass from defendant's hand to his mouth.

Defendant was immediately seized and forced to the floor. One

of the officers grasped defendant by the throat and exerted "a great deal of pressure" to prevent him from swallowing. Defendant was requested to "spit it out" but he refused to open his mouth. No attempt was made by any of the officers to physically force open defendant's jaws. One officer explained that he had been bitten so severely in a previous attempt to force a suspect's jaws apart that he had required medical attention. At this point, at least five officers were directly involved with the defendant in the hallway. One detective requested a can of Mace from the uniformed officer. The Mace was handed to Officer Janssen, who placed the can in front of defendant's face. Almost immediately defendant spit out a Kleenex containing eight rolled and knotted balloons. It was subsequently determined the balloons contained heroin.

The defendant was charged with possession of heroin. After preliminary hearing, defendant filed a motion to suppress the physical evidence and to compel the state to identify its informant. The motion to suppress was overruled. The case proceeded to trial and defendant renewed his motions. The heroin-filled balloons were admitted into evidence over defendant's repeated objections. The defendant was convicted as charged and he appeals.

Defendant alleges the trial court erred in (1) failing to suppress the physical evidence; (2) not requiring the state to identify its informant or in not conducting an *in camera* examination of the informant; (3) not giving a "fleeting possession" instruction; (4) allowing expert opinion as to the contents of the balloons taken from defendant where the opinion was based on scans produced by an infrared spectrophotometer and the scans had been destroyed prior to trial; and (5) not granting a new trial for an inflammatory remark made by the prosecutor during closing argument.

1. Motion to Suppress.

As his first point on appeal, defendant contends the trial court erred in overruling his motion to suppress the heroin-filled balloons. He first attacks the affidavit used to establish probable

cause for the issuance of the search warrant.[1] He contends the affidavit is insufficient to establish probable cause for its issuance in that it is not positively sworn to but is based on "information and belief"; it does not comply with the requirements of *Aguilar v. Texas,* 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509 (1964), in that it does not set forth facts sufficient to establish the reliability of the confidential informant and the underlying circumstances from which it could be concluded that the informer had reliable information that the contraband was located on the premises in question; and it fails to disclose circumstances indicating there was probable cause to believe heroin was on the premises at the time the affidavit was executed.

Defendant cites a ninety-four-year-old Kansas case (*State v. Gleason,* 32 Kan. 245, 250, 4 Pac. 363 [1884]) wherein the Kansas Supreme Court held that an arrest warrant based upon an oath "that the several allegations . . . are true, as he has been informed and verily believes" was not supported by oath or affirmation as required by section 15 of the bill of rights in the

---

1. The affidavit in pertinent part reads:

"That the basis of his probable cause is:

"I am a detective with the Wichita Police Department assigned to the Narcotics Section.

"I have been informed by a reliable confidential informant that the informant within the past two days has been inside the north half of the single-story frame duplex located at and known as 2029 North Volutsia, Wichita, Sedgwick County, Kansas; that the duplex is green in color and has white trim; that while inside the north half of the frame duplex the informant spoke with the occupant of the north half of the duplex; that the occupant is known to the informant by the name Rickie Jacques; that the occupant showed the informant several rolled and knotted balloons and told the informant that the balloons contained heroin; and that when the informant left the north half of the duplex, the rolled and knotted balloons were still inside the duplex. The informant also told me that he has seen heroin packaged in an identical manner on numerous occasions.

"I know that the informant is reliable. On one prior occasion the informant provided information to the Wichita Police Department which resulted in the issuance of a search warrant for a quantity of heroin. That search warrant was issued and executed within the past two weeks. When that search warrant was executed, a quantity of heroin was seized. As a result of the execution of that search warrant, a charge for possession of heroin was filed and is now pending in the Sedgwick County Court of Common Pleas.

"Based on the information provided to me by the reliable confidential informant, I believe that there is probable cause to believe that a quantity of heroin is presently located in the north half of the duplex known as and located at 2029 North Volutsia, Wichita, Sedgwick County, Kansas."

constitution of the state of Kansas. While *State v. Gleason,* supra, has never been overruled, it has been limited to issuing a warrant for the arrest of a defendant and an oath or affirmation and belief has been held sufficient for all other purposes. (*State v. Etzel,* 2 Kan. App. 673, 43 Pac. 798 [1896]; *State v. Blackman,* 32 Kan. 615, 5 Pac. 173 [1884]; *State v. Longton,* 35 Kan. 375, 377, 11 Pac. 163 [1886].)

The requirements for a search warrant based on hearsay obtained from a confidential informant were considered in *Aguilar v. Texas,* supra. The court stated at p. 111:

"[W]hen a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant,' [*Jones v. United States,* 362 U.S. 257, 270], and will sustain the judicial determination so long as 'there was substantial basis for [that determination]. . . .' "

The United States Supreme Court concluded that mere belief or suspicion is an insufficient basis. They rejected an affidavit where the police officer who swore to the affidavit indicated the unidentified informant merely believed or concluded that there were narcotics in the defendant's possession.

Hearsay evidence may be the basis for a search warrant. (*Jones v. United States,* 362 U.S. 257, 4 L.Ed.2d 697, 80 S.Ct. 725 [1960].) In *Jones,* the court held an affidavit established probable cause where the affidavit was based on hearsay so long as a substantial basis for crediting the hearsay was present. The affidavit recited that (1) the unnamed informant had purchased narcotics at the accused's apartment that was to be searched; (2) the unnamed informant had previously given accurate information; (3) the informant's story was corroborated by other sources of information; and (4) the accused was known by the police to be a user of narcotics. *Jones* was the forerunner of *Aguilar.* In *Aguilar,* the Supreme Court of the United States determined that there need not be information independent of the confidential informant to establish probable cause as long as the affidavit sets forth facts from which a detached and neutral magistrate could find there was probable cause to believe narcotics were present. Justice Goldberg, speaking for the court in *Aguilar,* said:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant [cite omitted], the magistrate

must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed [cite omitted], was 'credible' or his information 'reliable.' . . ." (p. 114.)

The Kansas Supreme Court has considered the question as recently as *State v. Sanders,* 222 Kan. 189, 563 P.2d 461 (1977), and approved a search warrant issued on an affidavit of a police officer based on hearsay of a confidential informant where the informant is shown to be reliable and credible.

When tested against the requirements of *Aguilar,* the affidavit is technically sufficient. The underlying facts on which the source bases his information are described—he was present in the house and he was shown the balloons. It is thus clear that the informant was speaking from his personal knowledge and not relating hearsay. Furthermore, the police officer set forth the reasons to support his belief that the informant was reliable—he had previously supplied information concerning the location of narcotics which proved reliable.

We are satisfied from a review of the affidavit that it was properly sworn to and that there was a substantial basis for the issuing judge to find probable cause to conclude that heroin was present at the address alleged. The question then remains whether there was probable cause to believe the heroin was still present when the affidavit states it was present at the named address "within the past two days."

We are troubled by the language found in *State v. Morgan,* 222 Kan. 149, 153, 563 P.2d 1056 (1977), where the Kansas Supreme Court stated:

"Evidence of a single isolated drug sale may not give probable cause to believe drugs are present at a particular location; however, where an affidavit gives evidence of activity indicating protracted or continuous conduct at a particular location and that evidence provides a reasonable basis to infer drugs are still present, probable cause may exist." (Citations omitted.)

The instant affidavit does not allege any occupant of the residence to be searched was either a user of or trafficker in narcotics, nor does the affidavit set forth a repeated course of suspicious activity occurring around the suspected address.

A number of cases have held search warrants valid when the affidavit revealed much longer lapses of time between the observation of the contraband and the making of the affidavit. In *State v. Seven Slot Machines,* 203 Kan. 833, 457 P.2d 97 (1969), seven

days elapsed. In *United States v. Harris,* 403 U.S. 573, 29 L.Ed.2d 723, 91 S.Ct. 2075 (1971), a purchase of illicit alcohol "within the past two days" was sufficient. In *United States v. Jones,* 366 F.Supp. 237 (W.D. Pa. 1973), a four-day interval was approved. Eight days was approved in *Irby v. United States,* 314 F.2d 251 (D.C. Cir. 1963) and *People v. Montgomery,* 27 Ill. 2d 404, 189 N.E.2d 327 (1963). Even longer periods have been approved where the trial court determined that no more than a "reasonable" time had elapsed. (100 A.L.R.2d 525, § 6, p. 534.) How much time will be permitted to elapse before a reasonable belief is destroyed that the contraband continues to be present at the place described must be answered on a case-by-case basis.

The judge who issues a search warrant is not required to leave his common sense at home. Heroin is normally found in the possession of either a user or a trafficker. A quantity of heroin was observed on the premises within two days of the issuance of the warrant, and a reasonable inference was that a portion of the prohibited narcotic would still be present when the warrant was issued. Considering the facts of this case, the trial judge did not err in denying defendant's motion to suppress due to a lapse of time which at the maximum did not exceed two days.

Defendant next contends there was no probable cause to search him, and therefore neither a valid premises search warrant nor K.S.A. 22-2509 gives the police the right to search an individual who is "incidentally" on the premises.

The police officers were on the premises under authority of a validly issued search warrant. The warrant was executed within thirty minutes of its issuance. There was some evidence the police wanted to execute the search warrant at a time when someone was present, preferably the defendant, Ricky Jacques. The evidence discloses that the police officers arrived in the area and, within minutes after they were organized, conducted the search. The police should be encouraged to search a residence while its occupant is present, and we do not find the short delay in executing the warrant in this case to be unreasonable. The exact time of execution of a search warrant is discretionary with the law enforcement officers and we do not find an abuse of discretion. (*State v. Morgan,* supra.)

The Kansas Supreme Court has previously held that where a valid search warrant is issued authorizing a search for narcotics,

the officer executing the search warrant may reasonably detain and search any person on the premises. (*State v. Loudermilk,* 208 Kan. 893, 494 P.2d 1174 [1972].) In *State v. Loudermilk,* the court held:

"In the execution of a search warrant, under the provisions of K.S.A. 1971 Supp. 22-2509, the reasonable detention and search of a person found on the described premises do not offend against the Fourth Amendment to the Constitution of the United States or Section 15 of the Kansas Bill of Rights where the purposes of the search are within those specified in the statutes." (Syl. ¶ 1.)

*State v. Loudermilk* is controlling on the right of the officers to search the defendant under the facts of this case and the trial court was correct in so holding.

The real issue is whether the officers conducted the search in a reasonable manner. What constitutes a "reasonable manner" is a question of fact which necessarily must be decided on a case-by-case basis. The guiding principle is set forth in *Rochin v. California,* 342 U.S. 165, 96 L.Ed. 183, 72 S.Ct. 205 (1952), where the Supreme Court of the United States reversed a conviction on the grounds that the conduct of the police violated due process of law. There the defendant swallowed contraband and was taken to a hospital where his stomach was forcibly pumped. The court noted this was conduct that "shocked the conscience" and that "convictions cannot be brought about by methods that offend 'a sense of justice.'" Thus, we are faced with determining whether the search in this case was conducted in an unreasonable manner so as to offend a sense of justice.

Here the officers were faced with a situation where they had a valid search warrant to search the premises for heroin. The affidavit for the search warrant revealed that the heroin was rolled in balloons and last seen on the premises in the possession of the defendant. The officers testified that they recognized the defendant when they entered the house, and it appeared to them that he put something into his mouth. They further testified they had been involved in prior incidents where a suspect swallowed contraband contained in tightly rolled balloons and were aware that it is a common practice for suspects in narcotics cases to swallow the evidence. The officers thus had reasonable grounds to believe the defendant was attempting to swallow the contraband for which they were authorized to search.

Defendant cites a number of cases where evidence has been

suppressed because of significant intrusions into the body of the defendant. An individual discussion of the cases cited by the parties is not justified since none are identical to the facts before us.

Defendant suggests that he was choked and Mace was sprayed in his face. It is defendant's position that either act standing alone is sufficient to justify suppression of the evidence thereby obtained.

Despite the fact the only testimony concerning the use of Mace came from police officers, the question of whether or not Mace was used is disputed. At the preliminary hearing before Judge Ballinger, Detectives Fulton and Easter unequivocally testified that Detective Janssen sprayed Mace in the defendant's face. When the incident occurred, Easter was applying pressure to defendant's throat to prevent defendant from swallowing and Detective Fulton was aiding in restraining defendant. Both officers were within an arm's length of defendant and were in a position to know if Mace was used.

A motion to suppress was subsequently filed and was heard by Judge Raum. Detective Fulton was the only officer to testify on the motion to suppress. He then testified he did not see any Mace sprayed, did not smell Mace, and that the defendant gave no indication he had been sprayed with Mace. Fulton did testify that Detective Janssen placed the Mace directly in front of defendant's face immediately prior to observing a Kleenex and eight balloons in little balls roll out of defendant's mouth. On cross-examination, Fulton testified he had assumed Detective Janssen shot some of the Mace. The transcript of the preliminary hearing was available but the record does not reveal that it was offered into evidence and considered by Judge Raum. No findings of fact were made. The journal entry indicated that evidence was taken, arguments of counsel considered, briefs filed on the issue, and the motion to suppress overruled.

The case was tried to a jury with yet another judge presiding. At trial, defendant renewed his motion to suppress. Detective Janssen testified, yet neither side inquired of Janssen whether he sprayed defendant with Mace. Officer Fuson, who did not testify at the preliminary hearing, testified he was the only officer present at the scene who had a can of Mace; that he had given his Mace to Officer Janssen; that he broke the spray button off the can of Mace

taking it out of the pouch and as a result it would have been impossible for Detective Janssen to have sprayed the Mace. The can of Mace was turned in to the Wichita Police Department two or three weeks after this incident and was not available for examination.

Detective Easter testified that Janssen placed the can of Mace in front of defendant's face and defendant spit out the Kleenex and balloons. He further testified he did not observe any Mace come out of the can. In response to a direct question of whether he knew if Mace was sprayed, he testified, "I can't tell you now whether Mace was sprayed or whether it was not sprayed." No effort was made to impeach Detective Easter despite the fact he had testified at the preliminary hearing that:

". . . Someone asked if anybody had any mace and . . . the only person I saw with the mace was Detective Janssen. The defendant had turned his face towards me by this time which was to the east, and I was looking directly into his face. And at that time Detective Janssen sprayed his face with mace and I let go of my hold around his throat. . . ."

Detective Fulton again testified he did not see Mace sprayed, nor did he smell it. On cross-examination he testified he assumed Janssen sprayed the Mace. He also read his report as follows: "The uniformed officer, I believe, then handed Detective Janssen a can of mace, and it was sprayed in Ricky Jacques' mouth, at which time he extracted eight balloons along with some Kleenex from his mouth." The defendant did not testify at any of the proceedings.

The trial judge found that the force used in searching the defendant was reasonable under the circumstances.

We are hampered by the failure of the hearing judge to make a finding as to whether or not Mace was actually sprayed in defendant's face. We note, however, that the entire incident occurred in a hallway approximately three feet wide. At least five officers and the defendant were in the confined space. Neither the defendant nor any of the police officers showed any signs of having been sprayed with Mace. We find it a bit difficult to believe that a trial judge could have concluded anything other than that Mace was in fact sprayed. It is obvious, however, that a minimal amount of Mace was used in view of the fact that neither the defendant nor any of the officers showed any after-effects of being sprayed. We are thus faced with the dilemma of remanding

the case to the trial court for findings of fact as to whether or not Mace was sprayed, or going on the assumption that a minimal amount of Mace was used and then determining as a matter of law whether or not the use of a minimal amount of Mace under the existing circumstances offends "a sense of justice."

The police officers were faced with two alternatives. They could allow the defendant to swallow the contraband (in which case we have no existing statutes which would authorize the defendant to be held without bond long enough to recover the contraband by allowing nature to run its course), or they could force his mouth open in a reasonable manner. Trying to force open the mouth of a young, healthy, adult male involves substantial risk both to the police and to the defendant. It would seem to us to be more humane to use a minimal amount of Mace rather than brute force.

The use of any Mace approaches the outer limits of acceptable conduct on the part of the police officers, and we would have no hesitation in holding that the excessive use of Mace would shock our sense of justice. Here, there is no evidence that the defendant suffered any ill effects as the result of the use of Mace, and we cannot say the use of Mace standing alone is so unreasonable as to offend "a sense of justice."

Whether or not pressure could be applied to a defendant's throat to prevent him from swallowing evidence presents a different issue. Legal authorities tell us that the rule in California is clear. A reading of their cases, however, does not necessarily support that conclusion. A police officer in California may not choke a defendant in order to prevent him from swallowing evidence. (*People v. Martinez,* 130 Cal. App. 2d 54, 278 P.2d 26 [1954].) They do permit a police officer to place his hands on the throat of a defendant and apply pressure without actually choking him for the purpose of convincing him to expel evidence from his mouth. (*People v. Mora,* 238 Cal. App. 2d 1, 47 Cal. Rptr. 338 [1965]; *People v. Larkin,* 52 Cal. App. 3d 346, 125 Cal. Rptr. 137 [1975].) We were unable to reach a rational decision based on whether or not the policeman testified he "choked" the defendant or merely "applied pressure." A criminal trial should be a search for the truth and not dependent upon semantics chosen by an officer.

We prefer to adopt the rule that when an officer has probable

cause to believe that a criminal offense is being committed in his presence he has the right to take reasonable measures to insure that incriminating evidence is not destroyed, and he may use reasonable force to subdue the defendant and prevent the defendant from swallowing the evidence. (See *United States v. Caldera*, 421 F.2d 152 [9th Cir. 1970], and *Hernandez v. Texas*, 548 S.W.2d 904 [Tex. Crim. 1977].)

We have a specific finding by the trial judge who heard evidence concerning the pressure applied to the defendant's throat that the police officers used reasonable force under the circumstances. A mugshot taken of defendant within the hour does show the presence of two places on the throat of the defendant where the skin was broken by the police officer's fingernails. No bruises, discolorations, or abrasions of any other nature appear on the defendant's neck. Having examined the photographs and the record in this case, we cannot say that the trial court erred in finding the force applied to the defendant's neck to prevent him from swallowing the evidence was not unreasonable. Nor do we find under the circumstances that the force used to subdue the defendant to prevent him from swallowing the evidence and the minimal amount of Mace used, when taken together, constitute unreasonable force.

### 2. Failure to Identify Informant.

Defendant next contends the trial court erred in overruling the defendant's motion for disclosure of the identity of the state's confidential informant or, in the alternative, conducting an *in camera* examination of the informant. His position is that the informant's identity was necessary to insure a "fair determination of the issues" of probable cause to issue the search warrant and the defense of "entrapment" and "fleeting possession." None of defendant's contentions requires reversal of the conviction.

Defendant contends the informant never existed. That contention goes to whether or not there was probable cause for the search warrant to issue and would have no bearing on the guilt or innocence of the defendant. When probable cause for a search warrant is in issue rather than the defendant's guilt or innocence, the state generally need not disclose the identity of the informant. (*State v. Robinson*, 203 Kan. 304, 454 P.2d 527 [1969].) Kansas does not allow a defendant to dispute the matters alleged in an affidavit supporting a search warrant which, upon its face, es-

tablishes probable cause. (*State v. Sanders,* supra; *State v. Wheeler,* 215 Kan. 94, 523 P.2d 722 [1974]; *State v. Lamb,* 209 Kan. 453, 497 P.2d 275 [1972].)

The identity of the informant must be disclosed when essential to a fair determination of the issues. (K.S.A. 60-436; see 76 A.L.R.2d 262.) Under the facts of this case, the defense of "entrapment" or "fleeting possession" could not have been made. The facts are uncontroverted that the defendant attempted to secrete the contraband in his mouth and swallow it. In view of the evidence the defense of "fleeting possession" or an "innocent handling" would be untenable. Likewise, the defense of entrapment would not aid the defendant. The record fails to show the informant participated in the crime. Since the informant had no actual involvement in the commission of the offense, nor was he a material witness, the informant cannot be found to have somehow trapped the defendant into committing the offense of possession of heroin. (*State v. Braun,* 209 Kan. 181, 495 P.2d 1000 [1972].)

There is presently no requirement that the trial judge conduct an *in camera* inquiry of an informant to ascertain either the existence of an informant or whether the affidavit to support a search warrant is accurate. Clearly, the judge should require the personal testimony of an informant when there is any reason to question the accuracy of the supporting affidavit prior to issuing the search warrant. If a question arises after the warrant issues, the judge may conduct an *in camera* hearing when he deems it necessary to protect the life of the informant. Here, the assistant district attorney, an officer of the court, assured the trial court on the record that the confidential informant did in fact exist.

We cannot say the trial court abused its discretion by not requiring the identity of the informant to be disclosed or by failing to conduct an *in camera* hearing.

3. Instruction on "Fleeting Possession."

The defendant in a criminal action is entitled to an instruction on his theory of defense if it is supported by any competent evidence. (*State v. McCorgary,* 218 Kan. 358, 543 P.2d 952 [1975].) However, the theory of defendant must be supported by competent evidence. The trial judge gave an instruction on intent as well as on possession. The instruction given on possession is framed in terms of knowledge and control. We recognize that the

defendant would have preferred the requested instruction; however, the instruction given contains all the essential elements of the crime. The defendant's actions were inconsistent with the defense of "fleeting possession." The defendant concealed the evidence and attempted to destroy the same which is sufficient to support the same inference of possession found in *State v. Knowles,* 209 Kan. 676, 498 P.2d 40 (1972). The trial court properly instructed the jury as to the applicable law in view of the evidence.

4.   Expert Opinion Testimony.

The state's expert witness testified as to the nature of the tests she performed on the substance retrieved from the balloons. Three separate tests were performed. The first test was a Marquis reagent test. The result of that test indicates only that an opium derivative is present. It is not conclusive. The second test performed was a thin-layer chromatography. The record does not show whether or not this test is conclusive. The third test was by infrared spectrophotometry. Simply stated, the third test is made by mixing the suspected material and placing it in a machine. The machine produces a graph which is then compared with a graph of a known substance. The expert witness testified that a lay person would not be qualified to compare the graphs and that it took special expertise to do so. She further testified that after the machine produced the graph and she compared it with the graph of a known substance, she destroyed the graph. Defendant objected to her giving her expert opinion that the material contained in at least one of the balloons was heroin. He contends that it violated the "best evidence rule" and there was an insufficient foundation for the expert's testimony. We are here confronted with a situation where ample material remained from the testing process for the defendant to conduct any tests he deemed necessary to insure the expert had not made a mistake. We are not faced with a critical situation where all of the material was consumed by the testing procedure and none remains available to the defendant for an independent test. The "best evidence rule" is contained in K.S.A. 60-467. It prohibits the admission of secondary evidence "except as otherwise provided by these rules." K.S.A. 60-456 specifically allows the introduction of opinion evidence when the testimony of the expert is based on facts personally known by the witness and within the scope of his

special knowledge. We deem this situation comparable to *Kollmorgan v. Scott,* 447 S.W.2d 236 (Tex. Civ. App. 1969), where the Texas Court of Civil Appeals held there was no error in allowing a physician to give his expert opinion based on X-ray findings without producing the X-rays in court. Such films are not subject to interpretation by lay jurors, as are other photographs, and are not intelligible without an interpretation by medical experts skilled in the art. The best evidence was held to be the doctor's interpretation of the X-rays and not the X-ray film itself. In *State v. Jefferson,* 204 Kan. 50, 54, 460 P.2d 610 (1969), a ballistics expert was allowed to testify as to the test results, although the bullets and casings were inadvertently lost. The court, speaking through Justice Fromme, stated, "In addition, the testimony of an expert as to tests, results thereof and demonstrations by him may be permitted and rests in the judicial discretion of the trial court."

There was ample testimony in this case that a layman would not be capable of making a comparison. There was no testimony to the contrary. Thus, under the evidence presented the trial court did not err in allowing the expert to give her opinion on the contents of the writing without producing the writing itself.

It is within the sound discretion of the trial court to determine whether or not an adequate foundation has been laid to introduce expert testimony as well as whether the expert witness is qualified to state an opinion. The judge's ruling will not be disturbed on appeal absent a clear abuse of judicial discretion. (*State v. Jones,* 209 Kan. 526, 498 P.2d 65 [1972]; *State v. Loudermilk,* 221 Kan. 157, 557 P.2d 1229 [1976].) The record reveals that the expert had demonstrated sufficient training and expertise in the area involved to express an opinion, and a sufficient foundation for her expert testimony was established. There was no abuse of discretion in either area.

5.  Inflammatory Comments.

The assistant district attorney in his closing argument stated the law enforcement officers were attempting to "stop the possession of heroin, heroin, which is a despised drug in our community, which is a—and as everyone knows, it kills people—." Defense counsel immediately objected and the trial judge sustained the objection on the grounds that it was designed to impassion the jury. Counsel did not request that the jury be instructed to disregard it, and the trial judge did not so instruct

the jury. After the jury had retired, defendant sought a mistrial and at that time pointed out to the trial judge that the jury had not been instructed to disregard the statement. The trial judge is authorized to declare a mistrial under the provisions of K.S.A. 22-3423 upon a finding that prejudicial conduct makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution. The decision to grant a mistrial is discretionary with the trial judge and the decision to deny a mistrial will not be set aside on appeal absent evidence of a clear abuse of discretion. (*State v. Rueckert,* 221 Kan. 727, 561 P.2d 850 [1977].) Where the evidence of guilt is of such direct and overwhelming nature that it can be said the misconduct of counsel in closing argument could not have affected the result of the trial, such misconduct is harmless error. (*State v. Hamilton,* 222 Kan. 341, 564 P.2d 536 [1977].) An examination of the record discloses the evidence of guilt is of a direct and overwhelming nature. Misconduct on the part of the prosecution amounted to harmless error (K.S.A. 60-2105), and thus we cannot say the trial judge abused his discretion in not granting a new trial.

Affirmed.