No. 48,898

STATE OF KANSAS, *Appellee,* v. RICKY JACQUES, *Appellant.*

(587 P.2d 861)

Opinion filed December 9, 1978.

*Daniel E. Monnat,* of Shultz, Fry & Fisher, of Wichita, argued the cause, and *Orval L. Fisher,* of the same firm, was with him on the brief for the appellant.

*Robert Sandilos,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Vern Miller,* district attorney, and *J. Larry Linn,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: A jury in Sedgwick County convicted Ricky Jacques of having unlawful possession of heroin. The conviction

was affirmed by the Court of Appeals. *State v. Jacques*, 2 Kan. App. 2d 277, 579 P.2d 146 (1978). This court granted review in order to consider three questions presented.

The first question of concern to this court was raised by the following point of argument contained in appellant's Petition for Review:

"I.   Should this Court review the Court of Appeals' holding that seven police officers may constitutionally fell a criminal suspect, pin him down and simultaneously choke him and eject Mace directly into his face and mouth solely for the purpose of expelling evidence from his body, insofar as it is contended that such conduct is not 'reasonable' within the meaning of K.S.A. 22-2509, constitutes an unreasonable search and seizure in violation of both the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Bill of Rights, and 'shocks the conscience' in contravention of the due process clause of the Fourteenth Amendment to the United States Constitution?"

On review of the record of the trial we find the above description of the search of the person of the defendant was with considerable overstatement. The actual evidence presented at the trial indicates that although seven police officers participated in securing the premises to be searched, only two officers applied any physical force to defendant. A third officer put handcuffs on him. Officer Fulton was on one side of defendant and Officer Easter was on the other. The defendant had placed small balloons containing heroin in his mouth and refused to cooperate with the officer's demands to spit them out. The scuffle lasted but a short time. The defendant was immobilized and one officer placed his hand around defendant's throat to prevent him from swallowing the contraband. The picture of defendant introduced into evidence to show injuries to defendant's throat has been examined and discloses nothing of consequence.

The testimony as to the alleged use of Mace, in spite of what was assumed by the Court of Appeals, is so inconclusive it appears doubtful that defendant was sprayed in the face or mouth. The basis for the inference that Mace was used to make defendant spit out the balloons is weak at best. The evidence defendant relies on apparently comes from testimony at the preliminary hearing, which transcript was not introduced in evidence at the trial and possibly should not be considered on appeal.

However, it is clear from the testimony of Kenneth Fuson that he was the only one who had a can of Mace with him. He testified

at the trial that one of the other officers asked for Mace. He pulled the Mace out of the pouch in which it was carried and the button on top, which is used to activate the spray, broke off and fell into the bottom of the Mace case. He handed the can to Detective Janssen in this condition. The officers were holding the defendant on the floor of a hallway approximately three feet wide. Fuson testified he was behind the defendant and placed him in handcuffs after the balloons were obtained. He categorically stated that no Mace was used. When the balloons of heroin were obtained defendant was then seated on a stool.

Officers Fulton and Easter testified at the trial that Detective Janssen had the Mace in his hand and brought the can of Mace down toward defendant's face. They did not observe or smell any Mace being sprayed into defendant's face. They would not say whether Mace was or was not sprayed. They testified at trial they did not see or smell any Mace. When the threat of the Mace was in front of defendant's face they saw the balloons of heroin coming from defendant's mouth.

A transcript of the testimony presented at the preliminary hearing was furnished to this court as part of the record on appeal. This transcript contains testimony by Fulton and Easter that Mace was sprayed. At the preliminary hearing Fulton testified that Janssen sprayed some Mace into defendant's face and the balloons of heroin then came out of his mouth. Easter testified that Janssen sprayed defendant's face with Mace and he spit out several balloons. At the trial both Fulton and Easter explained the variance between the testimony given at the preliminary and at the trial by saying they saw the can of Mace in Janssen's hand and assumed it was being sprayed. They neither saw nor smelled any Mace. This explanation appears logical.

There were three persons who would have been more likely to know whether Mace was sprayed into defendant's mouth or face. First, there was the defendant but he did not testify. Second, there was Officer Janssen, who held the can of Mace in his hand in front of defendant's face, and although he was examined by both parties during the trial, he was never asked if he sprayed any Mace from the can. Third, there was Officer Fuson who handed the can of Mace to Janssen and who testified the can was damaged when it was removed from its case and could not have been sprayed.

If Mace is sprayed in a three foot hallway occupied by four struggling men it would appear reasonable to assume all of these men would smell and feel the effects of the chemical. It appears from the testimony at trial no one suffered from or was treated as a result of coming into contact with the chemical spray. The testimony is such that we cannot say the trial court erred in refusing to suppress the evidence obtained in a search of the person of the defendant.

When an officer has probable cause to believe that a criminal offense is being committed in his presence, he has the right and duty to take reasonable measures to ensure that incriminating evidence is not destroyed; and he may use reasonable force to subdue the defendant and prevent the defendant from swallowing the evidence. *State v. Jacques,* 2 Kan. App. 2d at 288. See *United States v. Caldera,* 421 F.2d 152 (9th Cir. 1970), and *Hernandez v. Texas,* 548 S.W.2d 904 (Tex. Crim. 1977). A close examination of all the evidence fails to indicate conduct or methods that shock the conscience or offend the collective sense of justice of this court. The Court of Appeals properly affirmed the trial court, holding the search by the officers was not conducted in an unreasonable manner.

The second question which was of concern to this court when it granted the Petition for Review arose from the following statement by the Court of Appeals in *State v. Jacques,* 2 Kan. App. 2d at 282:

"We are troubled by the language found in *State v. Morgan,* 222 Kan. 149, 153, 563 P.2d 1056 (1977), where the Kansas Supreme Court stated:

" 'Evidence of a single isolated drug sale may not give probable cause to believe drugs are present at a particular location; however, where an affidavit gives evidence of activity indicating protracted or continuous conduct at a particular location and that evidence provides a reasonable basis to infer drugs are still present, probable cause may exist.' (Citations omitted.)"

The uncertainty expressed by the Court of Appeals went to a determination of the sufficiency of the wording in the application for a search warrant to support a finding by the issuing judge of probable cause for the warrant. After reexamining what was said in *State v. Morgan,* 222 Kan. 149, 153, 563 P.2d 1056 (1977), in light of the wording of the affidavit for search warrant in *Jacques* we are of the opinion a proper decision was reached by the Court of Appeals. The statement questioned by the Court of Appeals was, "Evidence of a single isolated drug sale may not give

probable cause to believe drugs are present at a particular location." The term "may not give probable cause" was used in *Morgan* merely to point out that a single isolated drug sale, standing alone, might not be sufficient to support a finding of probable cause for believing the contraband was still present on the premises. A protracted or continuous course of drug traffic at a particular location unquestionably would support the determination of probable cause. However, a single isolated drug sale might also have been sufficient to support the determination if such sale had occurred recently, and additional facts had been established to provide some reasonable basis to infer drugs remained on the premises after the sale. The lapse of time which would tend to remove all probable cause for issuance of a search warrant by destroying any reasonable belief that drugs remain on the premises will depend on the facts and circumstances of each particular case. We agree with the holding of the Court of Appeals in this regard. The trial judge did not err in denying defendant's motion to suppress due to lapse of time. The lapse of time did not exceed two days.

The third matter of concern appears in ¶ 6 of the syllabus of the opinion of the Court of Appeals where it says, "In the absence of statutory authority to the contrary, a party against whom a search warrant is directed may not dispute the matters alleged in the supporting affidavit or complaint." *State v. Jacques,* 2 Kan. App. 2d at 277. This statement of the law was based on three prior cases of this court. *State v. Sanders,* 222 Kan. 189, Syl. ¶ 3, 563 P.2d 461, *cert. denied* 434 U.S. 833, *reh. denied* 434 U.S. 1002 (1977); *State v. Wheeler,* 215 Kan. 94, Syl. ¶ 4, 523 P.2d 722 (1974); *State v. Lamb,* 209 Kan. 453, Syl. ¶ 4, 497 P.2d 275 (1972). The Court of Appeals handed down the *Jacques* case in May, 1978. On June 26, 1978, the United States Supreme Court decided the case of *Franks v. Delaware,* 438 U.S. 154, 57 L.Ed.2d 667, 98 S.Ct. 2674 (1978), in which an exception was carved out of the general rule. When the petition for review was filed we felt that this court should examine the exception in *Franks* in light of the facts of the *Jacques* case.

In *Franks* the high court reversed the Supreme Court of Delaware which held that a defendant might not dispute the matters alleged in a supporting affidavit on which a search warrant was issued. Prior to trial defendant's counsel in *Franks* filed a written

motion to suppress the evidence obtained by the search warrant and in support of allegations in the motion filed affidavits by two men which contravened the allegations made about them contained in the application for the search warrant. It was alleged in the application for search warrant that these two men had talked to the officer who applied for the search warrant and gave him information incriminating to the defendant. The affidavits of these two men stated that they had not talked to the officer and that the alleged facts recited by the officer were in truth "somewhat different." On the basis of these background facts the high court stated:

"In the present case the Supreme Court of Delaware held, as a matter of first impression for it, that a defendant under *no* circumstances may so challenge the veracity of a sworn statement used by police to procure a search warrant. We reverse, and we hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." 438 U.S. at 155.

The *Franks* case speaks to an area of constitutional law in which the decisions of the United States Supreme Court have precedent. Reluctantly we must follow that court's interpretation of the Constitution. As a result of the holding in *Franks,* the statements of the law in *State v. Jacques,* 2 Kan. App. 2d at 277, Syl. ¶ 6, and the corresponding portion of the opinion; in *State v. Sanders,* 222 Kan. at 189, Syl. ¶ 3, and the corresponding portion of the opinion; in *State v. Wheeler,* 215 Kan. at 94, Syl. ¶ 4, and the corresponding portion of the opinion; and in *State v. Lamb,* 209 Kan. at 453, Syl. ¶ 4, and the corresponding portion of the opinion must be and the same are overruled.

However, there is a presumption of validity with respect to an affidavit supporting a search warrant and generally a party against whom a search warrant is directed may not dispute the matters alleged in the supporting affidavit or application. *Franks v. Delaware,* 438 U.S. at 171.

An exception to the above general rule is recognized if the

challenger's attack is supported by allegations and an offer of proof under oath that the affidavit or application for search warrant contains material statements of deliberate falsehood or of reckless disregard for the truth. Under this exception an evidentiary hearing would be required on a motion to suppress evidence obtained in the search. The challenger has a duty to point out specifically the portion of the warrant affidavit that is claimed to be false, and a statement of supporting reasons should accompany the motion to suppress. In *Franks,* 438 U.S. at 171, the high court states:

"Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth Amendment, to his hearing. Whether he will prevail at that hearing is, of course, another issue."

On applying the *Franks* exception to the challenge against the application for search warrant in *Jacques* it is apparent no hearing is required in *Jacques.* The claim is entirely conclusory and is to the effect that the applicant who applied for the search warrant was lying because the name of the informant on which he relied was confidential and could not be discovered; therefore defendant alleged the informant never existed. There was absolutely nothing in the record to support this conclusion. No evidentiary hearing was required and the motion to suppress was properly denied by the trial court.

The opinion of the Court of Appeals is affirmed as modified.