(660 P.2d 574)

No. 54,273

STATE OF KANSAS, *Appellee*, v. JOHN WALTER, *Appellant*.

Opinion filed March 24, 1983.

B. L. *Pringle*, of Topeka, and *Lynn E. Martin*, of Paola, for the appellant.

*Herman A. Loepp*, county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before FOTH, C.J., SPENCER and PARKS, JJ.

FOTH, C.J.: A jury convicted defendant of possession of marijuana with intent to sell and possession of drug paraphernalia. The primary issue on appeal is whether the warrant under which the marijuana and paraphernalia were seized was properly issued, an issue raised by pretrial motion to suppress. The marijuana was in a half to three-fourths acre patch which, when cut by sheriff's officers, filled a county dump truck. The paraphernalia consisted of plastic planting cups and a small garden shovel or trowel found in the marijuana patch.

Our determination of this issue was initially hampered by the fact that neither party designated as part of the record on appeal the affidavit on which the warrant was issued, the warrant, defendant's motion to suppress, or the trial court's ruling on the motion. Because of the importance of this omitted material we have sent for, received, and examined it before making our decision.

There is no question but that the sheriff's affidavit was facially sufficient to support a finding of probable cause. The sheriff swore:

"Affiant is the Anderson County Sheriff and has received heretofore unverified information from several sources that John Walter was growing marijuana on the above-described premises. On July 21, 1981, affiant received one such report from an informant who specifically said that he had personally observed mari-

juana growing on the above-stated premises. Affiant, upon receiving that information proceeded to view the premises from the public road south of the Walter's premises approximately 100 feet and saw what appeared to be approximately 1 acre of marijuana plants growing approximately 75 to 100 feet west of the house. Most of the plants were taller than the affiant. Affiant, based upon his experience in law enforcement dealing with, handling, and observing marijuana, believes the plants he observed growing to be marijuana."

The affidavit was presented to the magistrate on July 23, 1981; a warrant was issued for defendant's house, outbuildings and farm; and the warrant was executed the same day. The house and outbuildings yielded nothing; the marijuana, the planting cups and the trowel described above were found in a field described in the return as "an opening in the timber, which lays approx[imately] 400 feet northwest of the Walters' house."

One cannot fault a magistrate for issuing a warrant based on such an affidavit. A sheriff's recent personal observation of large quantities of contraband, particularly when affixed to the soil, meets the most stringent standards for establishing probable cause even without the tips from several different sources. See *State v. Morgan,* 222 Kan. 149, 153, 563 P.2d 1056 (1977).

The trouble here is that the sheriff's later testimony—at the preliminary hearing and on the motion to suppress—differed markedly from the statements in the affidavit. Under *Franks v. Delaware,* 438 U.S. 154, 57 L.Ed.2d 667, 98 S.Ct. 2674 (1978); and *State v. Jacques,* 225 Kan. 38, 587 P.2d 861 (1978), inquiry may be made as to whether the affidavit supporting a warrant contains deliberate falsehoods or reflects reckless disregard for the facts. The trial court found it did not. Nevertheless the evidence shows that the affidavit departed from the truth in a number of respects. The major discrepancies were:

1. There were not several sources of information but only a single informant.

2. The last report of growing marijuana was not on the day the sheriff went to look but one or two weeks earlier.

3. From the road the sheriff had not seen an acre of marijuana but at most four plants.

4. The three or four plants observed were not taller than a man but at most two to three feet tall.

5. The plants were not 75 to 100 feet from defendant's house but at least 200 to 300 feet. (The return on the warrant said 400 feet.)

There were other discrepancies, such as the point of observation, but the above are those with the greatest significance.

How the affidavit came to vary so greatly from the truth was never developed in the proceedings below. The sheriff claimed he had never told anyone the marijuana was 75 to 100 feet from the house. He was also positive that he had only seen three or four small plants, and that he didn't determine that any marijuana was head high until after he was in the field executing the warrant. He did say he "was told" the marijuana was that tall, but the affidavit purported to reflect the sheriff's personal observations. The affidavit, he said, was prepared by the then county attorney. That officer did not testify, leaving the trial court and us to speculate as to how all the fabricated details found their way into the affidavit. We may accept the trial court's finding that the misstatements were not deliberate, but their abundance, detail, and the breadth of their departure from fact, all lead us to conclude that they reflect at least a reckless disregard for the truth.

Be that as it may, the trial court overruled the motion to suppress. Despite finding that the misstatements were not deliberate or even reckless, the trial court found it necessary to excise them in determining the sufficiency of the affidavit. In its ruling the court relied on this reading of the affidavit:

"With the inaccuracies removed, the affidavit still alleges the following facts:

"1. Affiant is the Anderson County Sheriff.

"2. Said affiant has received, heretofore, unverified information from several sources that defendant, John Walter, was growing marijuana on the described premises.

"3. Said affiant received one such unverified report from an informant, who specifically said that he had personally observed marijuana growing on the above stated premises.

"4. Affiant viewed, from a public road, marijuana plants growing upon the described premises. Affiant, based upon his experience in law enforcement, dealing with, handling and observing marijuana, believes the plants he observed growing, to be marijuana."

As previously indicated, we find no support in the record for paragraph 2; the sheriff's testimony was that he had only one informer. If that element is corrected, and if the sheriff's familiarity with marijuana is assumed, the affidavit contained two essential truthful elements for the issuing magistrate to consider: (1) The sheriff had received tips from an unidentified informer of unknown reliability who claimed to have seen marijuana grow-

ing on defendant's premises, and also claimed to know that it was being grown by defendant. (2) Acting on the tips and to verify them, the sheriff had observed from a public road *some* marijuana growing on defendant's premises.

To find probable cause the magistrate would have been required to find, from these two facts standing alone, that defendant was probably cultivating marijuana on his farm. We believe such a finding requires too great a leap of faith.

A Kansas magistrate must know that marijuana grows wild through much of this state. *State v. Brown,* 2 Kan. App. 2d 379, 579 P.2d 729 (1978). (The evidence showed that it grows wild in Anderson County where defendant's farm was located.) Knowing that, a magistrate presented with a "bare bones" affidavit such as outlined above would surely ask the sheriff further questions: How much marijuana did you see? How big was it? Did it appear to be cultivated? What was the surrounding terrain like? Was it so located that the suspect couldn't reasonably fail to know it was there?

These are the questions that seem necessary to us, and are the ones answered falsely in the original, unexpurgated affidavit. Although the State argues that these details are immaterial, they were deemed apparently significant by the draftsman of the affidavit. We agree. Without the answers it would be impossible to determine intelligently whether there was probable cause to believe that the occupant of the land was deliberately cultivating or in knowing possession of the marijuana seen by the sheriff. As our Supreme Court has said: "[A] deliberate omission is often equal to an actual misstatement. Thus, the *Jacques* and *Franks* rules can easily apply to a case where a person claims authorities deliberately omitted material information from a search warrant." *State v. Lockett,* 232 Kan. 317, 319, 654 P.2d 433 (1982).

If truthful answers had been supplied to the questions we think a magistrate would naturally ask, the sheriff's affidavit would have looked something like this:

1. An informant (unidentified, not claimed to be reliable) told me several times that defendant was growing marijuana, and that he had seen it.

2. A week or two after he last told me I drove by defendant's farm.

3. Through field glasses I observed 3 or 4 marijuana plants 2 to 3 feet tall.

4. These plants were growing in a field of other weeds.

5. The field was 200 to 400 feet from defendant's house, separated from it by two dense brushy areas, a fence, and a creek.

We cannot see how such an affidavit could give rise to more than mere suspicion at best. No attempt was made to support the credibility of the informant or the reliability of his information under the *Aguilar-Spinelli* tests. See *State v. Davis*, 8 Kan. App. 2d 39, 649 P.2d 409 (1982). The informant's tip rose no higher than that of an anonymous phone call. The three or four small marijuana plants showed no visible signs of having been cultivated. (As the evidence later showed, cultivated marijuana was at least two to three times as tall at that time of year.) It was growing in a weed patch where marijuana commonly grows wild. Finally, there was nothing to indicate, from its location or otherwise, that the occupants of the farm house knew or even should have known of its presence.

We conclude that the affidavit was insufficient, whether stripped to its two truthful statements as viewed by the trial court, or amplified by what we consider to be essential detail.

Before this court the present county attorney suggested that we should ignore the fictions of his predecessor and/or the sheriff, characterizing them as "mere puffing." That term connotes to us a salesman's deliberate exaggerations designed to sell an inferior product to a gullible customer. In the present context it would seem to mean embroidering an otherwise unsaleable affidavit with enough decorative detail that a magistrate would buy it without noticing its deficiencies. If that was the purpose it understandably succeeded. We cannot, however, put our stamp of approval on such a procedure. If law enforcement officials do not have in their possession facts sufficient to support a judicial finding of probable cause they are not free to make up the missing facts and swear to them simply to obtain a warrant.

The State also suggests that the errors in the affidavit should be overlooked because facts in such an affidavit must often be prepared "under pressures of time and distance." *United States v. Axselle*, 604 F.2d 1330, 1336 (10th Cir. 1979). We discern no such pressures here. The sheriff's last tip came a week or two before he decided to investigate. He made his observations on either July 21 or July 22 (the affidavit said July 21) and presented

the affidavit to the magistrate after 9:30 a.m. on July 23. All were working days. The affidavit contained only one critical paragraph, of five sentences. Four of those five sentences contain misstatements of facts, all purportedly within the personal knowledge of the affiant. This was not a case of putting together in one affidavit the results of a lengthy investigation involving information gathered by numerous agents separated by widespread distances. Neither was it a case where time was essential; the chances of growing marijuana's disappearing overnight were remote, as evidenced by the sheriff's own delay in initiating his investigation. In short, we reject "time and distance" as a justification for the distortion of facts which occurred between the time the sheriff related his knowledge and the time it was reduced to five written sentences.

In view of what has been said we need not reach defendant's other issues. The conviction is reversed and the case remanded with directions to suppress the search warrant and the fruits of the search and to grant a new trial.