(257 P.3d 794)
No. 103,379

STATE OF KANSAS, *Appellee*, v. JASON E. ORLOSKE, *Appellant*.

Opinion filed June 10, 2011.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and BRAZIL, S.J.

HILL, J.: Jason E. Orloske contends it was torture when, in an attempt to get him to spit out the drugs he had hidden in his mouth, a police officer bent Orloske over the hood of a patrol car, placed his hands on Orloske's·throat, and kneed him twice in the thigh. In Orloske's view, the trial court should have suppressed the drugs he had coughed up. Obviously, the reasonableness of any search and seizure of evidence depends on the circumstances of each search. Given the record of this case, where no motion to suppress was filed prior to trial and only an objection was made to the admission of the drugs at trial, the only evidence we have concerning the knee strikes by the officer was the officer's testimony that the knee strikes were routine and left no bruising. This is far from the concept of an intentional infliction of severe pain that constitutes torture. Although we are concerned about the infliction of pain as an inducement to secure contraband, we hold the actions of the officer here were reasonable and affirm the trial court's refusal to suppress the evidence.

*A struggle between Orloske and the officer ends with the seizure of contraband.*

Deputy Howard Edwards stopped a car with an improper tag as it was coming from a "known drug dealer's house." Deputy Dale Butcher pulled in behind Edwards' patrol car to assist. From Butcher's patrol car, he saw the passenger—Orloske—throw a clear pipe to the ground. Deputy Butcher then approached the passenger side of the vehicle (as Edwards was talking to the driver) and asked Orloske to step out. The deputy then handcuffed Orloske and walked with him back to Deputy Edwards' patrol car.

It was then that Butcher saw Orloske moving his mouth in a motion that suggested he was "trying to swallow something." After Butcher asked Orloske to open his mouth, he could see a green baggy in the back of Orloske's throat. Butcher placed both hands around Orloske's throat and placed pressure on his throat so that Orloske could not swallow the baggy. Butcher then bent Orloske over the hood of the patrol car and administered two "peroneal strikes" to the thigh in an attempt to get Orloske to spit out the

baggy. Butcher testified that after the peroneal strikes were administered, Orloske spit the baggy onto the hood of the patrol car.

At trial, Deputy Edwards described the baggy as "mangled and chewed," and Deputy Butcher said the baggy had been chewed and was open. The baggy contained a white crystal-like substance that was later determined to be methamphetamine.

The State charged Orloske with possession of methamphetamine in violation of K.S.A. 2007 Supp. 65-4160. At a bench trial on the matter, Orloske objected to "the constitutionality of the search" when the State offered the baggy into evidence. The State countered that Orloske had not filed a pretrial motion to suppress with regard to this evidence. Orloske replied that he did not think he needed a motion to suppress in order to object to the evidence. The court took the objection "under advisement" and permitted the two deputies, Edwards and Butcher, to testify about the baggy and its contents. In his closing argument, Orloske maintained that "excessive force" was used when the drugs were extracted from his mouth, noting he was never given the chance to spit the drugs out.

After hearing all the evidence, the trial court overruled Orloske's objection to the admission of the baggy. In doing so, the court first discussed probable cause to search. The court explained that before the stop, Orloske was in a vehicle parked at a known drug house; after the stop, the officers saw a glass pipe being tossed from the passenger window. The court held that under these facts, Butcher was justified in arresting Orloske because a reasonably prudent person would have believed that a drug crime had occurred. The court next discussed exigent circumstances when there is threat of imminent loss/destruction/concealment of evidence. The court said that in this case, the preventative measure Butcher took by placing his hands around Orloske's throat was reasonable because Butcher had observed Orloske's attempt to swallow the evidence and saw the baggy in his mouth.

The court found Orloske guilty of possession of methamphetamine and sentenced him to a prison term of 26 months, granted a dispositional departure, suspended incarceration, and ordered probation for a period of 18 months (along with postrelease supervision and mandatory drug treatment).

*We view this matter as a question of law.*

Orloske did not file a suppression motion. Instead, he objected to the admission of the baggy at trial. Because the district court had no suppression motion before it, we reject the standard of review suggested by Orloske that we determine whether substantial competent evidence supports the district court's factual findings and review its legal conclusions de novo. In *State v. Richmond*, 289 Kan. 419, 426, 212 P.3d 165 (2009), our Supreme Court stated such questions may be answered as a matter of discretion or as a matter of law:

" 'When a party challenges the admission or exclusion of evidence on appeal, the first inquiry is relevance. Once relevance is established, evidentiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district judge's discretion, depending on the contours of the rule in question. When the adequacy of the legal basis of a district judge's decision on admission or exclusion of evidence is questioned, an appellate court reviews the decision de novo.' [Citation omitted.]"

Obviously, the baggy containing methamphetamine was relevant to Orloske's charge, possession of methamphetamine. Here, the question is whether the search that yielded this contraband was lawful. The trial court was never asked to find any facts since there was no motion to suppress. Therefore, the court's legal conclusion, that the search was reasonable and thus lawful, involves a question of law over which we exercise unlimited review.

*We review briefly search and seizure law.*

We first note that Deputy Butcher had no search warrant. Any warrantless search by the police is per se unreasonable unless it falls within one of the exceptions to the search warrant requirements recognized in Kansas. *State v. Ransom*, 289 Kan. 373, 380, 212 P.3d 203 (2009). One such exception is probable cause with exigent circumstances. *State v. Fitzgerald*, 286 Kan. 1124, 1127, 192 P.3d 171 (2008). We turn then to determine whether the deputy had probable cause and if there were exigent circumstances that compelled a search such as this.

The law concerning probable cause to arrest is well settled—the facts must support a reasonable inference that a crime has been or is being committed:

"Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."

"When determining whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt." *State v. Abbott*, 277 Kan. 161, Syl. ¶¶ 2-3, 83 P.3d 794 (2004).

The facts lead us to agree with the trial court that Deputy Butcher had probable cause to believe Orloske was involved in a drug crime. Orloske was a passenger in a car at a known drug house. Deputy Butcher saw Orloske toss a glass pipe out of the passenger side window of the car. After he secured Orloske, the deputy noted he was moving his mouth as if he was trying to swallow something and when Orloske opened his mouth, Deputy Butcher saw the baggy at the back of his throat. The only reasonable explanation for Orloske's actions can be illicit drug involvement. These facts certainly support a probable cause finding.

Next, we turn to the question of whether the circumstances here called for a warrantless search by the deputy. Our Supreme Court has ruled that exigent circumstances exist when a police officer reasonably believes that evidence or contraband will imminently be lost. Like probable cause, this determination depends on the facts. See *State v. Fewell*, 286 Kan. 370, 384, 184 P.3d 903 (2008).

The police are aware that it is common for those suspected of drug crimes to try to conceal or destroy evidence by swallowing it. In fact, Deputy Butcher testified he was familiar with such concealment efforts and had received training on what measures to take to retrieve such evidence. He thought Orloske chewing on the baggy had ripped it open and the crystal meth would soon be lost. Deputy Butcher said this would be a threat to Orloske's health. The imminent loss of evidence and dangers to Orloske's health impel us to conclude these circumstances presented an exigency that called for swift police action. After reaching this conclusion, we must now look to the methods employed by the deputy in his search and seizure of the drugs and decide if they are reasonable.

*Two Kansas cases offer guidance in deciding this issue.*

Our research has disclosed two cases that are instructive, one is from our Supreme Court and the second is an unpublished case from this court. In *State v. Jacques*, 225 Kan. 38, 587 P.2d 861 (1978), with facts that resemble the facts here, the defendant raised an argument similar to that made by Orloske. Jacques placed heroin-filled balloons in his mouth and refused to spit the evidence from his mouth when ordered by police officers to do so. A brief scuffle, involving Jacques and two officers, followed. Jacques was immobilized while one officer put his hand around Jacques' throat to prevent him from swallowing the evidence. Our Supreme Court was not shocked by this conduct:

> "When an officer has probable cause to believe that a criminal offense is being committed in his presence, he has the right and duty to take reasonable measures to ensure that incriminating evidence is not destroyed; and he may use reasonable force to subdue the defendant and prevent the defendant from swallowing the evidence. [Citations omitted.] A close examination of all the evidence fails to indicate conduct or methods that shock the conscience or offend the collective sense of justice of this court." 225 Kan. at 41.

There was some evidence in *Jacques* that one of the officers might have sprayed mace into Jacques' face, but the Supreme Court was not persuaded that it had happened. The court noted that there were no apparent injuries to Jacques's throat.

The language in *Jacques* concerning the shocking of the conscience of the court has a historical context. That phrasing was used by the United States Supreme Court in *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed. 183 (1952). The *Rochin* Court reviewed police officers' use of force by employing a "shock the conscience" violation of due process standard. In that case, police officers illegally entered the defendant's home, struggled with him when they saw him place two capsules in his mouth, and when they were unsuccessful in retrieving the evidence, they took him to a hospital where his stomach was pumped. The Supreme Court characterized the police conduct as "brutal," "shock[ing to] the conscience" and "too close to the rack and the screw." 342 U.S. at 172-73. They concluded the police actions violated due process. 342 U.S. at 174. Thus, we have no doubts that there are constitu-

tional limits to police actions in retrieving evidence from a defendant.

Before we go on to the unpublished case, we note that Orloske claims that *Jacques* was wrongly decided, when he points out that other jurisdictions have reached different conclusions. This court is duty bound to follow Kansas Supreme Court precedent in the absence of any indication the court is departing from its previous position. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). Our research discloses no such indication pertinent to this issue.

Next, we look at an unpublished case with facts that are similar to this case. A panel of this court relied upon *Jacques* to uphold the search and seizure in *State v. Holloman*, No. 101,538, unpublished opinion filed April 22, 2010, *rev. denied* 290 Kan. 1099 (2010). In that case, an officer saw Holloman move something around in his mouth and saw a plastic baggy. When the officer suspected Holloman might swallow the baggy, he grabbed Holloman's arm, ordered him to spit the baggy out, took Holloman to the ground, and grabbed Holloman's jaw. Another officer joined the struggle and pinched Holloman's nostrils to prevent him from swallowing. The baggy was found on the ground near Holloman's head. Holloman argued the officers acted without probable cause and denied that exigent circumstances justified the search.

This court upheld the search, finding the officers "acted appropriately and with restraint" in preventing Holloman from swallowing evidence. Slip op. at 1. The court found exigent circumstances, highlighting that Holloman refused to spit the baggy out. Slip op. at 4. The court rejected the argument that cocaine is not soluble and would have passed through Holloman's body, explaining the officer did not know what Holloman had in his mouth and drugs that *are* water soluble could have been irretrievably lost. The court stated that closing Holloman's nostrils and briefly placing a hand around his neck was "not shocking." Slip op. at 4-5.

It is instructive to compare the similarities between this case and the facts in *Holloman*. Deputy Butcher asked Orloske to open his mouth. Butcher could see the baggy in the back of Orloske's throat. Butcher testified that it is not unusual for persons to try to conceal

evidence in this manner. Butcher placed both hands around Orloske's throat and put pressure on his throat so that Orloske could not swallow the baggy. Butcher then bent Orloske over the hood of the patrol car and gave him two peroneal strikes. Butcher testified he has been trained with regard to the peroneal strike and the extraction of evidence from the mouth. Butcher said that the above technique is the "fastest [and] safest" way to remove a baggy without causing severe harm to the person or the officer. Butcher testified that after two peroneal strikes were administered, Orloske spit the baggy out.

The only facts that distinguish this case from *Jacques* and *Holloman* are that: (1) Butcher did not order Orloske to spit the baggy out; and (2) Butcher administered two peroneal strikes to the thigh. We examine both in turn. Neither persuades us that the search was unreasonable.

First, although Butcher admitted he did not ask Orloske to spit the baggy out, Butcher said this was because Orloske was "in the effort of" destroying the evidence. Indeed, the purpose of the exigency exception to the warrant requirement is to prevent the imminent destruction of evidence. See *Fewell*, 286 Kan. at 384. It would be counterintuitive to require officers to first *ask* suspects to voluntarily give up evidence in situations of exigency such as this.

Second, the peroneal strikes to the thigh are not particularly disturbing in light of this court's approval of the officers' actions in *Holloman*—where the suspect was grabbed by the arm, taken to the ground, and his nostrils were pinched. The only evidence we have in this record about the two strikes comes from Deputy Butcher. At trial, Butcher compared the peroneal strike to a "charley horse"—stating the strike causes pain but no injury. There is no evidence that Orloske suffered injury from the peroneal strikes.

In this appeal, Orloske claims Butcher "went much further" than the officers in *Jacques* because he put pressure on Orloske's throat, bent him over the hood of a car, and "proceeded to torture" Orloske. First, as discussed above, Butcher's actions, although somewhat different, were no more extreme than the officers' actions in *Holloman*. Second, Orloske's claim of "torture" is simply unsup-

ported by the record. Orloske attempts to compare the peroneal strikes given here to those discussed in a report regarding soldiers abusing Afghani inmates. That report is not found in the record. There is no evidence Orloske suffered injury as a result of the peroneal strikes.

We pause here to note that we are sensitive to the seriousness of the argument raised by Orloske. Anytime a police officer intentionally causes pain to a suspect in order to retrieve contraband, there exists the potential for abuse. Frankly, the question is one of severity. The application of severe pain would indeed be reminiscent of the rack and screw and would be unreasonable and a due process violation. Because each case must be evaluated individually, any rule that could be penned to cover all the possible factual situations would be so general that it would be meaningless. But we emphasize there are limits. See *Rochin*, 342 U.S. at 174.

Both parties here take great pains to list cases from other jurisdictions that support their differing positions. Indeed, the cases listed in the annotation found at Annot., 64 A.L.R.5th 741 seem to be divided generally into two groups: The constriction by the police of a suspect's airway for any length of time is usually considered too extreme and therefore a due process violation. Loss of oxygen to the brain can lead to irreversible brain injury or death very quickly. On the other hand, the application of pressure to the throat that prevents swallowing has in some cases been acceptable. Here, two strikes by the deputy's knee to Orloske's thigh, causing no bruising and, therefore, no apparent injury, are similar to the actions taken by the officers in *Jacques* and *Holloman*. The actions were not shocking or unreasonable.

Affirmed.